**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JACOB DOCKTER** | : | **CRIMINAL NO. 21-CR-556** |
| | : | |
| **Defendant.** | : | |
| | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing proceeding. The government requests this Court to sentence the defendant, Jacob Dockter, to 180 months of incarceration, followed by 10 years of supervised release.

I.      **Factual Background**

As described in the Statement of Offense, ECF #43, and the Government's Memorandum in Support of Pre-trial Detention, ECF #10, on May 28, 2020, an undercover agent with the Child Exploitation Task Force in the District of Columbia ("UC agent") joined a group on the KIK messaging application known to be devoted to the receipt and distribution of child pornography. The defendant, Jacob Dockter, entered the group and began communicating with the UC agent, telling the UC agent that he had access to a two-year-old girl. The defendant said this toddler was his relative and said he had taken nude images of her in the past. The defendant stated that he was just starting to "show" this relative and was thinking about starting a "gallery." He then sent the UC agent both live and non-live images of the victim, in which she was partially unclothed. When the UC agent asked the defendant what images he had taken of the child in the past, the defendant sent another image of the same victim, in the same room as the previous images, in which she was

1

lying on her stomach on the bed and an adult male was holding his erect penis above her nude buttocks. The defendant indicated that he had contemplated "playing" with the child but had not done so yet. After sending the UC agent these photos, the defendant asked the UC agent to send him photos of the UC's purported 8-year-old child.

Law enforcement executed a search warrant of the defendant's residence on the same day. Law enforcement found the same room where the above-described photos were taken, and 16 images of the two-year-old were found on deleted space in the defendant's phone, including the images described above. The Kik application had been deleted from the defendant's phone. Moreover, the two-year-old child was determined to be the defendant's biological daughter.

## II.   <u>Statutory Penalties</u>

The defendant pled guilty to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). This crime carries a statutory minimum sentence of five years' imprisonment and a maximum sentence of twenty years' imprisonment; a maximum fine of $250,000; and an order of mandatory restitution, pursuant to 18 U.S.C. § 3663A. *See* Presentence Investigative Report, ECF # 55 (hereinafter "PSR"), ¶ 4. The defendant must pay any applicable interest or penalties on fines and restitution not timely made, and a $100 special assessment. *Id.* The defendant is subject to an additional assessment in the amount of $5,000 pursuant to 18 U.S.C. § 3014(a). *Id.* Additionally, the Court must impose mandatory restitution pursuant to 18 U.S.C. § 2259 in an amount no less than $3,000 per victim, to reflect the defendant's relative role in the causal process underlying the victim's losses. *Id.* at ¶ 5. The crime carries a term of supervised release of at least five years but not more than life, pursuant to 18 U.S.C. § 3583(k). *Id.* at ¶ 82.

### III.    U.S. Sentencing Guidelines

In the plea agreement, the parties agreed to an estimated guidelines range that differs from, and is lower than, the guidelines range calculated in the PSR. *Id.* at ¶ 80. The government agrees with the guidelines range calculated in the PSR, while noting that the plea agreement prevents the parties from seeking an offense-level calculation and resulting guidelines range that is different from the estimated guidelines range in the plea agreement. *Id.* at ¶ 79. However, both the estimated guidelines range calculated in the parties' plea agreement and the guidelines range calculated in the PSR exceed the statutory maximum penalty for this crime, which results in an adjusted guidelines range of 240 months.

### A.    Offense Level Calculation

In the plea agreement, the parties estimated that the Total Offense Level would be calculated as follows under Guideline § 2G2.1[1]:

| | |
|---|---|
| Base Offense Level: | 32 |
| (b)(1) Prepubescent Minor Under Age 12: | +4 |
| (b)(3) Knowingly Engaged in Distribution: | +2 |
| (b)(5) Defendant is Parent of Victim: | +2 |
| (b)(6) Use of a Computer: | +2 |
| **Adjusted Offense Level:** | **42** |
| | |
| Acceptance of Responsibility: | -3 |
| | |
| **Total Offense Level:** | **39** |

*Id.* at ¶ 7.

The U.S. Probation Office correctly calculated the Total Offense Level under § 2G2.1 as follows:

| | |
|---|---|
| Base Offense Level: | 32 |
| (b)(1) Prepubescent Minor Under Age 12: | +4 |

---

[1] The guideline for a violation of 18 USC § 2252(a)(2) is Guideline § 2G2.2, but under the cross reference at § 2G2.2(c)(1), § 2G2.1 is used to determine the offense level in this case because it results in a higher offense level. *See* PSR, ¶ 21.

| | |
|---|---|
| (b)(3) Knowingly Engaged in Distribution: | +2 |
| (b)(4)(B) Portraying an Infant or Toddler | +4 |
| (b)(5) Defendant is Parent of Victim | +2 |
| **Adjusted Offense Level:** | **44** |
| | |
| Acceptance of Responsibility: | -3 |
| | |
| **Total Offense Level:** | **41** |

*Id.* at ¶¶ 21-33.

### B.  <u>Criminal History Category</u>

The parties in the plea agreement calculated the defendant's Criminal History Category to be II, resulting in an estimated guidelines range of 292-365 months. *Id.* at ¶ 78. The U.S. Probation Office also calculated the Criminal History Category to be II, resulting in a guidelines range of 360 months to life. *Id.* at ¶ 77.

### C.  <u>Applicable Guidelines Range</u>

Under either calculation, the lower end of the calculated guidelines range exceeds the statutory maximum of 20 years. Therefore, the applicable guidelines range is 240 months. *Id.* at ¶¶ 77-78. In the plea agreement, the government agreed to seek a below-guidelines range sentence in this case. *Id.* at ¶ 9.

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007), 127 S. Ct. 2456. As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by

4

professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. §1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. *See* 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission *both* determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that *significantly* increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738. "Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range' as its starting point." *United States v. Mattea*, 895 F.3d 762, 766 (D.C. Cir. 2018) (internal citation omitted).

**D.**    **A Sentence of 180 Months of Incarceration, Followed by 10 Years of Supervised Release, Accurately Reflects the 3553(a) Factors**

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a). These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the Defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the Defendant; and
    (D) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
(3) the kinds of sentences available;
(4) the applicable sentencing guidelines range for the offense;
(5) pertinent policy statements issued by the U.S. Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019). A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

In this case, as detailed below, the Section 3553(a) factors weigh in favor of a sentence of 180 months of incarceration, to be followed by a 10-year period of supervised release.

*1.    The Nature and Circumstances of the Offense*

In this case, the defendant pled guilty to distribution of child pornography. The defendant's offense conduct – distributing an image of an erect male penis poised above a two-year-old child's nude buttocks -- demonstrates not only a dangerous sexual interest in children, but also a callous

6

disregard of the harm and pain which his actions caused the innocent child in the image. This child, like all children depicted in child sexual abuse material, is re-victimized and re-traumatized each and every time an individual, like the defendant, views or shares the image for his own sexual gratification. The defendant's conduct is even more egregious given that the child in the image is his own daughter. His willingness to exploit his two-year-old daughter for his own sexual gratification – and then to share that image so that others may participate in her abuse – is appalling. The defendant has not only harmed his child by creating and sharing this image of her, but he has also deprived her of ever having a normal relationship of trust with her own father. The combination of these circumstances will cause incalculable damage and harm when she is old enough to become aware of these events.

Thus, the defendant's conduct in this case is more egregious than many others who come before the Court having been convicted of Distribution of Child Pornography. This offender not only distributed child sexual abuse material, but he in fact *created* such material, using his own 2-year-old daughter. A sentence of 180 months' incarceration reflects the severity of the defendant's offense.

## 2. *History and Characteristics of the Defendant*

The defendant comes before the Court with a prior criminal history. He has been convicted of two crimes: possession of a knife at school (*see* PSR at ¶ 35); and roughly a year-and-a-half later, vandalism, resulting in a restitution order of over $3,000 (see *Id.* at ¶ 36). Probation violation reports were filed in both cases, and the defendant's participation in a work release program was terminated because he failed to appear. *Id.* at ¶¶ 35-36. There were two additional arrests for vandalism during the same period. *Id.* at ¶¶ 41-32. At the time of his arrest at age 25, the defendant was unemployed, and he reported that he has never held full-time employment. *Id.* at ¶¶ 68-69.

In considering the defendant's past criminal conduct, the Court can also consider that he entered a KIK group known to be devoted to the receipt and distribution of child pornography. The defendant told the UC agent that he had taken nude images of his two-year-old relative in the past, that he was just starting to "show" this relative, and that he was thinking about starting a "gallery" of her. These statements suggest that the instant offense was not an anomaly: it was not the first time that the defendant had distributed images of the child, nor would it have been the last time had he not been arrested for this offense. Indeed, despite the defendant's claim to the psychosexual evaluator that he had never searched for child pornography prior to the date of the offense, his familiarity with particular terms used by individuals who traffic in child pornography during his conversation with the UC agent (i.e., discussing how he was starting to "show" the victim and that he was contemplating "playing" with her) strongly suggests the contrary.[2]

The government recognizes that the defendant reports that he was sexually abused as a young child by a half-brother who was approximately five years his senior. The defendant also reports experiencing instability as a child in California. However, this history does not explain or justify why, once the defendant was an adult, he chose to exploit his own two-year-old daughter. In order words, there is nothing about the defendant's history or characteristics that would justify a shorter period of incarceration than that requested by the government.

---

[2] The government also notes that the psychosexual evaluator reported that the defendant "may not have answered all questions in a completely forthright manner" and also sought to minimize his culpability as it pertains to the instance offense.

3.      *Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense*

Child pornography offenses are extremely serious because they result in perpetual harm to the most vulnerable victims, while simultaneously validating and normalizing the sexual exploitation of children. Courts across the country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012).[3]

When enacting mandatory minimum penalties for those who produce and traffic in the sexual abuse and exploitation of children, Congress similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

---

[3] *See also In re Amy Unknown*, 636 F.3d 190, 201 n.12 (5th Cir. 2011) (*citing United States v. Norris*, 159 F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for images of children, perpetuating abuse); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of child pornography. With a click of the button on a camera, the sexual abuse of these children is memorialized forever. It is terrible enough that a child must live with the knowledge of his or her initial abuse. It is hard to even comprehend how that child could then learn to cope with the fact that strangers everywhere are using the worst moments of that child's life to sexually gratify themselves and that he or she can do nothing to stop them from continuing to do so. The only recourse that these children have is the strong enforcement of the laws that hold these offenders accountable for the tremendous damage they have inflicted upon countless child victims.

Producers and consumers of child pornography, like the defendant, create a market and demand for materials depicting the sexual abuse and exploitation of real children. They contribute to the cycle of abuse and are in part responsible for the harm suffered by the children used to produce the materials in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007). In other words, even when consumers of child pornography do not themselves molest children, their actions directly contribute to the abuse of children.

10

A sentence of 180 months would provide "just punishment" for this defendant's offense, promote respect for the law, and reflect the seriousness of his offense. This sentence is merited due to the harm that the defendant caused to his very own daughter – and by extension to her mother and other family members. His daughter will forever be haunted by the knowledge that her own father exploited her in this horrific way and that strangers everywhere are potentially using images of her victimization to sexually gratify themselves, while she can do nothing to stop them. As such, a sentence of 180 months, to be followed by ten years supervised release, is warranted.

      4.    *Adequate Deterrence and Protection of the Public*

The production, solicitation, receipt, and distribution of child pornography endangers the public by encouraging the rape, violence, and abuse of children. In *United States v. Miller*, the Fifth Circuit stated:

> [R]eal children are being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today.

665 F.3d 114, 123 (5th Cir. 2011). The importance of deterrence with respect to child pornography offenses is well-established. Serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the demand for its production:

> The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*Goldberg*, 491 F.3d at 672; *see also Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography

if it penalizes those who possess and view the product, thereby decreasing demand"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

In this case, there are serious indications that the defendant's harmful conduct could continue – and escalate – in the future. For example, the defendant indicated to the UC agent that he intended to sexually abuse his two-year-old child in the future, and that he wanted to produce and share more pornographic images of her. The defendant's willingness to exploit his own daughter in order to obtain child pornography demonstrates his utter disregard for others, including those individuals most vulnerable. His lack of empathy and the callousness of his conduct certainly underscores his potential dangerousness.

Moreover, the defendant's sentence should be sufficient to deter not only the defendant from reoffending in the future, but also to deter the criminal conduct of others who engage in, or contemplate engaging in, the trafficking of child sexual abuse material. As stated in *Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for trafficking in child pornography, the greater the customer demand for it and so the more will be produced." 491 F.3d at 672. *See also Goff*, 501 F.3d at 261 (stating in a child pornography possession case that "deterring the production of child pornography and protecting

the children who are victimized by it are factors that should have been given significant weight at sentencing").

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."). As stated in *United States v. Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007).

The government's recommended sentence of 180 months' incarceration adequately serves this purpose. Furthermore, the imposition of a lengthy period of supervised release – ten years – ensures that the defendant will continue to be monitored for a substantial period following his release, which serves to protect the public from future criminal conduct like that which brought him before the Court in the instant matter.

5.    *The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct*

Section 3553(a)(6) directs courts to consider the need to avoid *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010)).

In the instant matter, the defendant produced an image of child pornography of his own two-year-old daughter and distributed it to a stranger online. Although the production of this image did not apparently involve hands-on abuse, it is nonetheless extremely concerning. The government believes that a sentence of 180 months of incarceration adequately balances the

13

minimal amount of child pornography that the defendant is convicted of distributing (one image) with the severity of its content – namely, that he created the image, and that he used his own child to do so. Indeed, the government notes that the *mandatory minimum* sentence for production of an image of child sexual abuse is 15 years, *see* 18 U.S.C. § 2251(e), which corresponds to the government's request of 180 months' incarceration in the instant case. Given the unique circumstances of this defendant compared with other individuals sentenced for distribution of child pornography – very few of whom create the material they are charged with distributing – the government's recommendation does not create an unwarranted disparity.

6.     *Restitution*

The government attempted to contact the mother of the victim in this case in order to comply with the government's obligations pursuant to the Crime Victims' Rights Act (18 U.S.C. § 3771), including securing a victim impact statement, if she would like to offer one, and determining if there is a request for restitution. To date, the government has not received a response to these inquiries.

7.     *Conclusion*

For the reasons set forth above, the Government respectfully requests that the Court sentence the defendant to a period of 180 months of incarceration, to be followed by 10 years of supervised release.

Respectfully submitted,


MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:

  */s/ Caroline Burrell*
Caroline Burrell
Assistant United States Attorney
Federal Major Crimes
601 D Street, NW
Washington, D.C. 20530
(202) 252-6950
Caroline.Burrell@usdoj.gov

  */s/ Karen E. Stauss*
Karen Stauss, D.C. Bar Number 499725
Special Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
Email: Karen.Stauss2@usdoj.gov

15