UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 21-CR-556 (TJK) |
| ) | |
| JACOB DAVID DOCKTER, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### JACOB DAVID DOCKTER'S SENTENCING MEMORANDUM

Mr. Jacob David Dockter, through counsel, respectfully submits this Sentencing Memorandum in support of his request for a sentence of 5 years incarceration, followed by five years of supervised release under strict conditions.

Pursuant to a plea agreement, Mr. Dockter has pled guilty to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The plea agreement includes an estimated guidelines analysis that results in an estimated guidelines range of 292 to 365 months in prison, capped at 240 months because of the statutory maximum penalty associated with the single count. This guidelines amount, however, is both advisory and just one of multiple sentencing factors. Assessing them all, a sentence of five years, with an additional five years of supervision upon his release, is sufficient, but not greater than necessary, to comply with the factors guiding federal sentencing.

Mr. Dockter's offense – taking four pictures of his naked two-year old daughter and sending them over the Internet as part of a potential exchange of such material – is completely abhorrent, and he is ashamed and appalled for his actions that day. The Court should recognize, however, that this is Mr. Dockter's first and only such offense; his actions were truly aberrant. He never previously engaged in such behavior and certainly never abused his daughter or any other

1

child. He is committed to getting the drug and psychological treatment necessary to understand what led him to do what he did, and ensure he never engages in such behavior again.

The total of ten years (a five year term of incarceration plus 5 years of supervised release) requested is just part of Mr. Dockter's punishment. Because of his incomprehensible actions that night, Mr. Dockter will be required to register as a sex offender for a minimum period of 25 years in any jurisdiction where he lives, works, or studies. Presentence Report ("PSR") ¶ 10. His greatest punishment, however, is that he is now irreparably and permanently estranged from his wife and daughter. Mr. Dockter has not spoken to his daughter, A.D.,[1] since his arrest and, as part of his repentance, voluntarily ceded all his parental rights to her mother – Mr. Dockter's long-time girlfriend and common-law wife, Celena Washington. *Id.* ¶ 51. In one night, Mr. Dockter irrevocably destroyed his life and all that was important to him, and the Court should consider that fact in arriving at a sufficient sentence.

The requested sentence also is sufficient because of the prison conditions Mr. Dockter has faced since he was arrested and imprisoned on May 28, 2020, near the start of the pandemic and related lockdowns. The Court (and the government) is well-aware of the appalling conditions in which Mr. Dockter has been held, including denial of food and water, unsanitary living conditions, cancelled support and treatment programs, and a comprehensive jail lockdown that lasted for over a year. These terrible conditions fall far below the minimum expected and required of the United States, and their harshness counsels for a reduced prison sentence.

For these reasons, and others set forth below, the Court should sentence Mr. Dockter to five years in prison, followed by five years of supervised release under strict conditions and a lifetime as a registered sex offender. This requested sentence accords with the parsimony principle

---

[1] The daughter will be identified by her initials, A.D., throughout this sentencing memorandum.

that guides federal sentencing and is a sufficient sentence for him.

## BACKGROUND

**The Plea Agreement and Guidelines Calculation**

On November 16, 2021, Mr. Docketr pled guilty, pursuant to a plea agreement, to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). *See* Statement of the Offense in Support of Guilty Plea [ECF no. 43]; PSR ¶ 4.

The advisory range in this matter is based upon a total offense level of 39, together with a criminal history category of II. *See* PSR ¶¶ 7-9; Plea Agreement [ECF No. 42] at 2-4.[2] Because the guidelines range exceed the statutory maximum penalty of 240 months associated with the offense for which Mr. Dockter timely pled guilty, the guidelines sentence is capped at 240 months.

As discussed herein, 240 months is not the appropriate sentence for Mr. Dockter. Rather, both the 18 U.S.C. § 3553(a) sentencing factors and the overarching parsimony principle that directs federal sentencing support the requested below-guidelines sentence of ten years (five years in prison and five years or supervised release). The Court should impose this ten-year sentence.

**Jacob David Dockter**

Jacob David Dockter is 28 years old and a resident of California, where he has lived almost his entire life. PSR ¶ 44. His parents, Kenneth Spencer Dockter and Monica Page, ended their relationship when Jacob was about two-years old. *Id.* ¶45.

Because of his parents' separation, Jacob spent his formative years living with various households – his mother, then his father, then his mother, then his grandmother, and then again with his father until he graduated from high school. PSR ¶ 45. This semi-nomadic condition

---

[2] The Department of Probation agrees that Mr. Dockter's criminal history category is II, but calculates a total offense level of 41, instead of 39. See PSR ¶¶ 20-33, 37. Under either calculation, the guidelines range is capped at 240 months.

provided the opportunity for Jacob to be sexually abused several times by one of his older half-brothers during his adolescence – abuse that should be addressed in future therapy. *Id.* ¶ 48.

Although Jacob did well in school academically, he was often bored by the ease of the material and got in trouble for talking and not paying attention during class or for getting into a water fight with friends in the hall. *See* Psychological Evaluation and Risk Assessment Report of Jacob David Dockter by Allison Schechter, Psy.D. ("Dr. Schechter Report") at 4, attached hereto as **Exhibit A**.[3] In 2013, his senior year in high school, he was expelled and received a misdemeanor conviction for bringing a knife to school. PSR ¶ 35. Jacob did so entirely by accident – he had been on a camping trip with friends and still had the knife in the back pocket of his pants when he went to the school campus – but the school had a zero-tolerance policy for weapons on campus. *See* Dr. Schechter Report at 7. Jacob finished his high school education at a continuation school and graduated on time. *Id.* at 5. Shortly after graduating, at age 19, he was convicted of vandalism for graffiti on public property. PSR ¶ 36; Dr. Schechter Report at 7. Since these teenage convictions, Mr. Dockter settled down and had been, until his offense almost ten years later, law-abiding.

Jacob's subsequent years were unremarkable. He had a job working with his father, a long-term committed relationship with his high school girlfriend, and a child. PSR ¶¶ 49, 53, 69; Dr. Schechter Report at 5, 9. He rebuilt his relations with his father and stepmother, that had been strained by his prior legal issues, and, despite a serious marijuana addiction (discussed in greater detail below), was leading a normal, law-abiding life. As his stepmother, Maria Moreno-Dockter,

---

[3] Dr. Allison Schechter is a Clinical and Forensic Psychologist practicing in Virginia and Illinois. She has a Sex Offender Evaluator license in Illinois and has been conducting Sexually Violent Persons evaluations and providing expert testimony in Illinois and Virginia for well over a decade. Dr. Schechter's Resume and related information is attached hereto as **Exhibit B**.

relates:

> Jacob was so intelligent and was always very respectful and helpful. He went on to have a girlfriend and a child of his own and when we would all spend time together, Jacob was a very caring and loving boyfriend and father. He was a hard worker and took on the responsibility of taking care of his family and everything seemed like it was trending in the right direction.

Letter to Court from Maria Moreno Dockter ("Maria Dockter Letter") at 1, attached hereto as **Exhibit C**. *See also* Dr. Schechter Report at 11-12 (collateral interview of Monica Page, Jacob Dockter's mother: "Never in my wildest dreams would I have thought he would do anything like that. He was a good dad; he was a good kid; didn't get into trouble. I was just stunned.").

Everything Jacob had built came crashing down because of his actions in a single day. He is extremely ashamed and remorseful for his what he did. And he wants nothing more than to get the help he needs to address his actions and ensure he never does anything like that again. Ms. Maria Dockter continues:

> When I learned of the allegations against Jacob, it was a great shock and didn't seem possible. Having children of my own, it has been quite hard for me to accept the situation. However, I have spent enough time with Jacob to know that he is not a horrible person. He just did a horrible thing.
>
> As I said, it took me a long time to accept the crime Jacob has committed. However, every single one of us has done something that they wish they could take back. My hope is that Jacob can get the help that he needs and come out of this a better person. His erroneous decisions have cost him so much. He has lost everything he worked for and the simple truth is, it is going to be a very hard life for him from this point forward. We all know that the prison sentence is just the tip of the iceberg. He will forever go through life with a target on his back and will be limited to   where he can live, where he can go, where he can work and multiple other ramifications because of the nature of his crime.

Maria Dockter Letter at 1.

Ms. Dockter is correct. Jacob is not a horrible person; he just did a horrible thing. Given Jacob's individualized circumstances and the aberrant nature of his offense conduct, a guidelines sentence is not appropriate here. Instead, the requested sentence instead is sufficient to punish

5

Jacob, deter others, and get Jacob the help he needs to ensure he does not reoffend, all while allowing him a real chance to re-enter society and rebuild his life.

**The Offense Conduct**

On May 28, 2020, Mr. Dockter entered KIK group[4] and began a private discussion with an undercover law enforcement officer ("UC"). As part of that conversation, Mr. Dockter sent four pictures of his naked two-year old daughter to the UC. PSR ¶¶ 12-15. He was arrested later that night and his electronic devices seized. *Id.* ¶ 15.

**The Aberrant Nature of the Offense Conduct**

Mr. Dockter was immediately remorseful for his conduct. He was the one who abruptly "ended the conversation in kind of self-disgust, not know what the hell I was doing" and immediately deleted the KIK App on his phone. Dr. Schechter Report at 11. He was, and remains, extremely remorseful for what he did. As he relates:

> I didn't want to have the conversation, I already wanted to take it back at that point. An hour or two later, I was arrested. I wish it hadn't happened; I wish I could take it back. I destroyed my family and my life. I haven't talked to my daughter since that day. I think I've gotten an I love you from her during the first contact with [his girlfriend]. I wish I could go back to the way things were. I shattered everything.

*Id.* He is committed to getting the drug and psychological treatment necessary to ensure he never engages in such behavior again.

Attached hereto as Exhibit A is the Dr. Schechter Report. Dr. Schechter reached her conclusions based on in-person interviews with Mr. Dockter, collateral interviews of family, a battery of psychological tests administered to Mr. Dockter (the PAI; Static-99R; and Static-2002R), and her years of experience and specialized knowledge in the field. *See* Dr. Schechter

---

[4] KIK is a free mobile messaging application, like WhatsApp or Viber, that can be used on both the iPhone and Android devices. *See* https://www.webwise.ie/parents/explainer-what-is-kik/

Report at 1-26. Her conclusion: Mr. Dockter is *not* a pedophile:

> Mr. Dockter's behaviors demonstrate, and clearly raise concerns, about a temporally-limited pedophilic interest in young prepubescent females. However, the limited detected offense related timeframe during which his offending behaviors and communications with the undercover officer occurred leads to the conclusion that that *he does not meet diagnostic criteria for any specific paraphilic disorder, including pedophilia*.

*Id.* at 24 (emphasis added). Dr. Schechter is correct. This online non-contact sexual offense is Mr. Dockter's one and only offense of this kind. *Id.* Certainly, the government, who seized his phone and any other devices he had in May 2020, have not since alleged that Mr. Dockter had any additional child porn in his possession, or adduced any evidence of any other child-related offenses by him. Mr. Docketr's mother, Monica Page confirms that she had never seen her son engage in any such behavior before. Letter to Court from Monica Page ("Monica Page Letter") at 1, attached hereto as **Exhibit D.**

The question remains why Mr. Dockter did what he did that day – Jacob himself has no explanation. *See* Dr. Schechter Report at 11 (Jacob Dockter: "I wish I could tell you; I don't know."). Dr. Schechter believes that his offense can be traced to his Cannabis Use Disorder that has never been addressed in treatment. *See id.* at 8, 15-16, 25. Jacob has been a daily user of marijuana since he was 16, and he began marijuana "dabbing" (the inhalation of extremely concentrated psychotropic cannabinoid) for the last several years before his arrest. PSR ¶¶ 60-61; Dr. Schechter Report at 8, 15-16, 25. Dabbing is dangerous; indeed, Mr. Docker experienced several episodes of psychosis after consuming concentrated marijuana. *See id.* at 6-7; PSR ¶ 62. As Dr. Schechter explains:

> His [Mr. Dockter's] Cannabis Use Disorder contributed significantly to his lack of ambition and motivation to obtain and keep consistent employment, which led to him being at home all day with his daughter with no meaningful routine or structure. These components were likely a significant contributor to Mr. Dockter having too much time on his hands, which led him to turning to the internet for stimulation, which eventually led to his sexual offense. It is highly likely that his severe

7

Cannabis Use Disorder was a significant contributor to his pathway to sexual offending.

Dr. Schechter Report at 25.[5]

To address his actions and any future risk, Dr. Schechter recommends that Mr. Dockter (i) participate in a substance abuse treatment program and be subjected to periodic drug testing to address his drug addiction; (ii) participate in a sex offender specific treatment program both during and following his incarceration; and (iii) he have no unsupervised access to the Internet or to his daughter (at least until he has fully internalized the lessons of his treatment programs). Dr. Schechter Report at 25-26. Dr. Schechter concludes that, with time and treatment, Mr. Dockter can successfully rehabilitate:

> Mr. Dockter appears to be generally compliant with authority and appears capable of living a law-abiding lifestyle, as indicated by having minimal prior criminal involvement and his report of receiving no behavioral infractions during his incarceration. There is no clinical indication of Mr. Dockter meeting diagnostic criteria for Antisocial Personality Disorder and he has not exhibited significant lifestyle criminality. Additionally, he has expressed a willingness to participate in sex offender treatment. Although he has not fully taken responsibility for his offending behaviors, this alone would not prevent him from having the ability to fully participate in sex offender treatment and learn effective behavioral controls to manage his sexual behavior, should he fully commit to openness and honesty within the treatment setting, both during any term of incarceration and upon his return to the community.

*Id.*

---

[5] At the time of his offense, Mr. Dockter was "masturbating two times per day to pornography or to a female he was talking to online." Dr. Schechter Report at 9. Research studies have shown that excessive porn consumers such as Mr. Dockter can become desensitized to porn, often needing to consume more porn, and more extreme forms of porn, to get the same dopamine response they once did. *See, e.g.*, Albery, I.P., Lowry, J. Frings, D., Johnson, H.L., Hogan, C., & Moss, A.C. (2017). "Exploring the Relationship between Sexual Compulsivity and Attentional Bias to Sex-Related Words in a Cohort of Sexually Active Individuals, *European Addiction Research*, Vol. 23 (2017) at 1-6, available at https://doi.org/10.1159/000448732. In one 2016 study, researchers found that 46.9% of respondents reported that, over time, they began watching pornography that had previously disinterested or even disgusted them. Wery, A. & Billieux, J. (2016). "Online sexual activities: An exploratory study of problematic and non-problematic usage patterns in a sample of men." *Computers in Human Behavior*, Vol. 56 (March 2016) at 257-266, available at https://doi.org/10.1016/j.chb.2015.11.046.

## ARGUMENT

### A. The Legal Standard for Sentencing

In selecting a sentence, this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013); *see also, e.g., Pepper v. United States*, 562 U.S. 476, 493 (2011); *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." *Douglas*, 713 F.3d at 700.

In determining such a sentence, the sentencing court must consider the United States Sentencing Guidelines, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to serve the purposes of sentencing, the kinds of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. *Id*. § 3553(a)(1).[6] In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. *Id.* § 3661.

While the sentencing guidelines comprise one factor for this Court to consider, they are only one such factor, and "truly are advisory.'" *Douglas*, 713 F.3d at 700 (quoting *United States*

---

[6] Based upon Mr. Dockter's financial situation – lack of income, lack of assets, and no positive cash flow – he does not have the ability to pay a fine or provide financial restitution in this case. See PSR ¶¶ 70-75, Thus, the restitution in this matter should be $3,000. *See id.* ¶ 100.

9

*v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc)). This Court "may not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007); *see also Nelson v. United States*, 555 U.S. 350, 352 (2009). Indeed, under the parsimony principle that guides federal sentencing, "it is crucial that judges give careful consideration to every minute that is added to a defendant's sentence. Liberty is the norm; every moment of incarceration should be justified." *United States v. Faison*, No. GJH-19-27, 2020 U.S. Dist. LEXIS 27643, at *3-4 (D. Md. Feb. 18, 2020). Here, an individualized assessment of the § 3553(a) factors (and application of the parsimony clause) support the requested sentence of five years (60 months), followed by an additional five years under supervised release.

B. **The § 3553(a) Factors All Support the Requested Non-Guidelines Sentence of Five Years, Followed by Five Years of Supervised Release**

As detailed above, Mr. Dockter's personal characteristics and history support the requested sentence. He is a good man who did a horrible thing. A sentence that meets all the sentencing goals while still releasing him at an age when he can rebuild his life and return to being a valued and law-abiding member of society is the appropriate result here.

To begin, the sentencing goal of punishment is sufficiently met by the requested sentence. Mr. Dockter would be sentenced to far more punishment than five years in prison. Mr. Dockter already has been severely punished by the consequences of own actions. In one act of madness, he destroyed his family and his life and will now spend a lifetime as a registered sex offender, with all the difficulties and social disapprobation that comes with that classification. In addition, the requested sentence includes five years of supervised release. Supervised release "is not merely 'letting an offender off easily.'" *Gall,* 552 U.S. at 48 and n. 4. Supervised release involves "substantial restrictions on freedom" that effectively deter and punish in their own right. *Id.*; *see*

10

*also* PSR ¶ 91 (listing the significantly restrictive minimum "conditions of supervision" applicable to Mr. Dockter). Thus, under the requested sentence, Mr. Dockter would serve a total of ten years (120 months) as punishment for his offense. He would register as and be known as a sex offender.

Similarly, the sentencing goals of specific and general deterrence, and rehabilitation, support the requested non-guidelines sentence. As to specific deterrence and rehabilitation, the facts show that Mr. Dockter is remorseful and intent on never re-offending. Importantly, in Dr. Schechter's professional opinion, the case-specific factors in this case – including the fact that he is not a pedophile and has no other non-contact (or contact) offenses of this kind – means that Jacob is at a low risk of recidivism. Dr. Schechter Report at 23-26.

Her conclusion that Mr. Dockter poses a low risk of reoffending is supported by the relevant scientific literature. *See e.g.,* Hanson, R.K. & Bussiere, M.T., "Predicting relapse a meta-analysis of sexual offender recidivism studies," *Journal of Consulting and Clinical Psychology,* Vol. 63 (1998) at 348-362; Camilleri, J.A., "Pedophilia: Assessment and treatment," *Sexual Deviance: Theory, Assessment and Treatment,* Vol. 2 (2008) at 183-212. Indeed, a study done by Probation and Pretrial Services looked at recidivist rates among sex offenders across different conduct categories. Probation's study determined that "[c]hild pornography offenders were especially likely to be considered low risk, with nearly all (97%) of those offenders initially being assessed in the low or low/moderate risk categories." Further, the lowest risk category was Mr. Dockter's risk category – child pornography with no record of contact behavior. *See* Thomas Cohen & Michelle Spidell, "How Dangerous Are They? An Analysis of Sex Offenders Under Federal Post-Conviction Supervision," *Probation & Pretrial Services, AO US Courts, Federal Probation Pub.*, Vol. 80 No. 2 (September 2016). In other words, Mr. Dockter is best deterred and rehabilitated through treatment for drug and offender counseling, not by additional years beyond those proposed in the

requested sentence. *See* Dr. Schechter Report at 25-26; *see also See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) at 278 & n.31 (stating that "appropriate 'treatment interventions . . . are associated with lower rates of recidivism—some of them very significant," and citing a project funded by the United States Department of Justice).

Likewise, the requested non-guidelines sentence of ten years will generally deter others who are considering committing the same impulsive offense as Mr. Dockter. "Research to date generally indicates that increases in the certainty of punishment, as opposed to the severity of punishment, are more likely to produce deterrent benefits." Valerie Wright, "The Sentencing Project, Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment," 5-6 (2010), available at http://www.sentencingproject.org/wp-content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf. Hence, it is the arrest that best deters others, not the length of the ultimate sentence. Mr. Dockter's neighbors, associates, and community have seen him get immediately arrested and placed in jail and already have been deterred. That immediate arrest, together with five years in prison, five years of supervised release, and a lifetime of sex offender registration is sufficient to generally deter others.

In sum, as shown herein, the parsimony principle underlying federal sentencing supports the sentence requested because it is sufficient, but not greater than necessary to meet the sentencing goals of punishment, specific and general deterrence, and rehabilitation.

### C. The Requested Non-Guidelines Sentence Will Avoid Unwarranted Sentencing Disparities

Another sentencing goal is the avoidance of unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *Id*. § 3553(a)(1). Here, the guidelines sentence of 240 months in prison will improperly result in an unwarranted sentencing disparity.

Persons guilty of much more egregious conduct than Mr. Dockter's aberrant, one-time online non-contact offense have been sentenced to far less time than 240 months (20 years):

- In *United States v. James Brown,* 12-cr-155 (RJL), the defendant distributed child pornography and arranged to meet to engage in sexual contact with a 12 year old. He was also under investigation for sexual abuse of his grandchildren and his own daughter (both of which he conceded the government could prove). Defendant was sentenced to **144 months**.

- In *United States v. Darrell Best,* 15-CR-122 (RBW), the defendant, a police officer and pastor, was convicted of Production of Child Pornography and First and Second Degree Sexual Abuse of a Minor after sexually abusing two young female congregation members and filming it at MPD headquarters and in his church. Defendant was sentenced to an aggregate sentence of **18 years**.

- In *United States v. Harold Reynolds,* 09-cr-117 (JR), the defendant distributed child pornography and admitted he had previously abused and molested his daughter on at least two occasions. Defendant was sentenced to **121 months**.

- In *United States v. Gregory Loreng,* 12-cr-132 (JDB), the defendant possessed and distributed child pornography and had previously abused his adopted sister over multiple years. Defendant was sentenced to **96 months**.

- In *United States v. Tanner Stickney,* 09-cr-152 (HHK), the defendant filmed himself molesting a 4-year old child and distributed the film to others. Defendant was sentenced to **15 years**.

- In *United States v. Urlick Evens,* 16-CR-79 (RBW), the defendant produced child pornography and committed first degree sexual abuse against a 15 year old. Defendant was sentenced to **102 months**.

Likewise, the requested sentence of 60 months in prison, followed by an additional 60 months of supervised release is in no way out of the ordinary for cases of this nature and does not result in a sentencing disparity. Rather, as the following cases demonstrate, 60 months in prison reflects the norm for sentencing similarly situated defendants who, like Mr. Dockter here, accepted responsibility for their conduct, timely pled guilty to the charged offense, and entered into plea agreements:

- In *United States v. Brian Dennis Hess*, 17-cr-0002 (KBJ), Mr. Hess was charged by criminal complaint with distribution of child pornography. According to the criminal complaint, he sent nude photographs of his purported prepubescent daughter on multiple occasions. He also claimed to have communicated with the father of a prepubescent girl from Ohio and sent nude

13

photos of that young girl as well. The National Center for Missing and Exploited Children (NCMEC) determined that the images were not Mr. Hess's child, but images of a victim of prior sexual abuse. Mr. Hess's phone was found to contain over 600 images of child pornography including sadomasochistic acts involving children and images depicting sexual acts being performed on children. Mr. Hess pld guilty to Distribution of Child Pornography. His final guideline calculation was an offense level 34, criminal history category 1, resulting in a range of 151 to 188 months. Mr. Hess was sentenced to the mandatory minimum of 60 months with 10 years of supervised release.

- In *United States v. Bayo Bakare*, 16-CR-00129 (TSC), Mr. Bakare was charged by criminal complaint with distribution of child pornography and traveling from Maryland into the District of Columbia for the purpose of having sex with a minor. According to the criminal complaint, Mr. Bakare claimed to be sexually active with a prepubescent girl he described as his god daughter, and he claimed to have videos and photos of her. He sent the UC graphic images and described having had sexual contact with his goddaughter. Mr. Bakare then arranged for the UC to travel to D.C. so Mr. Bakare could have sex with the UC's (fictitious) underage daughter. On multiple occasions, Bakare sent the UC Dropbox links to voluminous child pornography. According to the complaint, Bakare met with the UC at a prearranged location intending to have sex with his daughter. Bakare had condoms on his person and in his car. Mr. Bakare pled guilty to one count of distribution of child pornography. His guideline calculation, after acceptance of responsibility, was an offense level 34. The probation office calculated his criminal history points as six, putting him in a criminal history category III, with priors involving drugs and impaired driving. His resulting guideline range was 188 to 235 months. Mr. Bakare was sentenced to the mandatory minimum of 60 months, followed by 10 years of supervised release.

- In *United States v. Brian Philip Schwan*, 17-CR-00175 (CRC), Mr. Schwan was charged by criminal complaint with distribution of child pornography. According to the criminal complaint, Schwan advised the UC that he wanted to be sexually active with his daughter but was waiting for her to reach the age of 4. Schwan offered to trade videos and sent six Dropbox links containing multiple disturbing videos, including videos depicting the sexual abuse of infants. During the chat with the UC, Schwan arranged to meet the UC in D.C. to have sex with the UC's supposed 9 year old daughter. Schwan sent photos, clothed, of his actual infant daughter suggesting that in the future the UC could have sex with her. Mr. Schwan pled guilty to one count of distribution of child pornography. His final guideline calculation was an offense level 34, criminal history category 1, resulting in a range of 151 to 188 months. Mr. Schwann was sentenced to the mandatory minimum of 60 months, followed by 10 years of supervised release.

- In *United States v. Michael Jacob*, 17-CR-0023 (JEB), Mr. Jacob was charged by criminal complaint with distribution of child pornography and traveling from Maryland to D.C. for the purpose of engaging in sex with a minor. According to the criminal complaint, Mr. Jacob actively sought out a mother who was interested in incest. A UC responded and Mr. Jacob asked if the UC was active with his purported 9 year old child and whether he would share her. Mr. Jacob advised that he had been looking for a while for someone willing to provide sexual access to their child. He claimed to have come close to meeting a woman with a 5 year old girl recently, but that the mother had backed out at the last minute. Mr. Jacob and the UC then began making arrangements to meet so Mr. Jacob could engage in sexual contact with the purported 9 year old. During discussions that ensued, Mr. Jacob sent images of young children being sexually abused.

14

He told the undercover officer that he had a hard drive full of child pornography and that he would bring it to the meeting and allow the undercover to make a copy. They continued to converse over the course of several days to make arrangements to meet. Mr. Jacob arrived at the prearranged location intending to engage in sexual activity with the purported minor child. During a post-arrest interview, Mr. Jacob acknowledged the earlier attempts to engage with sexual activity with a woman and her minor son. His computer and phone contained more than 600 images of child pornography. Mr. Jacob pled guilty to both distribution of child pornography and traveling for the purpose of engaging in illicit sex with a minor. His sentencing guidelines for the distribution count was 97 to 121 months and on the travel count was 108 to 135 months. After applying the multiple count adjustment, his guideline range was 135 to 168 months. The Court sentenced him to concurrent sentences of 60 months on each count and 10 years of supervised release.

- In *United States v. James Gordon*, 17-CR-0026 (TFH), Mr. Gordon was charged by criminal complaint with distribution of child pornography and with traveling from Maryland into D.C. for the purpose of engaging in illicit sexual contact with a minor. According to the criminal complaint, Mr. Gordon offered to share "taboo pics and vids with" the UC. The UC claimed to be a father of a 9 year old female and Mr. Gordon advised that he liked young girls. Mr. Gordon asked to see pictures of the UC's daughter and offered to send videos and pictures in return, promising that he had "tons" to share. Mr. Gordon sent images and videos to the UC on several occasions and on several occasions discussed meeting to engage in sexual conduct with the purported daughter. Later, Mr. Gordon arrived at the preordained location where he was arrested. Mr. Gordon pled guilty to a one count criminal information charging him with distribution of child pornography. The government agreed not to charge him with the travel with the intent to engage in illicit sexual acts with a minor. His sentencing guidelines for the distribution count was 135 to 168 months. The Court sentenced him to 60 months and ten years of supervised release.[7]

As the foregoing cases all demonstrate, the Court should sentence Mr. Dockter to the requested non-guidelines sentence of five years (60 months) in prison and five years (60 months) of supervised release to avoid unwarranted sentencing disparities.

### D. The Exceptionally Harsh Conditions of Confinement Mr. Dockter Has

---

[7] In the past, the government offered pleas to the lesser charge of possession of child pornography even when the facts supported distribution, allowing a defendant to seek a sentence below 60 months as there is no mandatory minimum of 60 months. *See, e.g., United States v. Donald Essex,* 15-CR-103 (PLF) (defendant distributed to an undercover officer and made plans to engage in sexual activity, sentenced to 60 months); *United States v. Keith Dietterle,* 13-CR-80 (ABJ) (defendant distributed to undercover officer and discussed meeting for sexual activity with minor, sentenced to 42 months); *United States v. Cornelius Magee,* 12-CR-269 (ABJ) (defendant distributed to undercover officer and discussed meeting for sexual activity with minor, sentenced to 46 months).

**Experienced Support the Requested Non-Guidelines Sentence**

In weighing the appropriateness of the requested sentence, the Court should take into account the exceptionally harsh conditions of confinement that Mr. Dockter has suffered since May 28, 2020, which has resulted in the psychological and emotional equivalent of a far longer term.

The Court is aware of the COVID-19 pandemic's outsized impact on the prison system and the absolutely appalling conditions that resulted, including at the Central Virginia Regional Jail. Mr. Dockter was there for the brunt of it and was himself held under extreme lockdown for months. As correction personnel and inmates fell ill or tested positive, and as the lockdown lengthened, the usual functions and routines that served to ameliorate prison life to some extent – including personal visits, phone calls, exercise, hot food, showers and hygiene, religious services, and programs – stopped or broke down.

All this means is that, for much of the past two-plus years, Mr. Dockter has been effectively confined to his cell, deprived of human contact, and subject to worsening and inhumane conditions, all the while constantly afraid that he would die, either by being infected with the coronavirus or by falling prey to the increasing violence and chaos at the facility. Irrespective of blame, it cannot reasonably be disputed that Mr. Dockter's time in prison has been far more punitive than the equivalent time in more usual circumstances.

The Court should impose the requested non-guidelines sentence given the conditions Mr. Dockter has lived through these last 24 months. *See, e.g., United States v. Carty*, 264 F.3d 191 (2d Cir. 1991) (recognizing that the conditions of confinement are relevant to the Court's sentencing determination); *United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016) ("trial judge cannot close his or her eyes to the conditions a particular defendant being sentenced will necessarily experience in prison. … the prison environment must be considered by the sentencing judge in

16

estimating total harm and benefits to prisoner and society—a utilitarian as well as a compassionate exercise"); *United States v. Majaaliwa*, 2017 U.S. Dist. LEXIS 168305, *1-2 (E.D.N.Y. Oct. 6, 2017) ("'objectively more severe prison conditions' provide a basis to depart from the [sentencing guidelines] range").

## CONCLUSION

An individualized assessment of the § 3553(a) factors in this case (and the parsimony principle) supports a non-Guidelines sentence of five years, followed by five years of supervised release under strict conditions. Accordingly, Mr. Dockter respectfully requests that the Court impose that sentence upon him.

> Respectfully submitted,
>
> A. J. Kramer
> Federal Public Defender for the District of Columbia
>
> /s/Michelle Peterson, Chief, AFPD
> 625 Indiana Ave., N.W., Suite 550
> Washington, D.C.  20004
> (202) 208-7500, ext. 130
>
> Sabrina Shroff
> 80 Broad Street, 19th Floor
> New York, New York 10004
> 646-763-1490
> *Attorneys for Mr. Jacob David Dockter*